IN THE UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF INDIANA

```
                              )
DALE RUSSELL,                 )
       Petitioner,            )
                              )  CIVIL CASE NO:
v.                            )   1:13-cv-538-SEB-DKL
                             )   [1:08-cr-004-SEB-KPF]
                             )
UNITED STATES OF AMERICA,     )
       Respondent.            )
```

PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE

TO MOTION FOR POST-CONVICTION RELIEF

In his reply to the government's response to  his motion for post-conviction relief, filed pursuant to 28 U.S.C. § 2255, the petitioner, Dale Russell, replies as follows:

In the government's response, the government contends that five of petitioner's issues were addressed on direct appeal.  However, the government apparently misunderstood these five issues or misread the four issues on direct appeal.  None of these issues are the same nor have they been raised in prior proceedings; all are distinct issues.  Also, the

government responded to issues 1 and 2 using an argument based on the facial constitutionality of the 18 USC § 2251 statute. This was not the argument presented by the petitioner.  The petitioner's issues involve unconstitutionally vague AS APPLIED and overbroad AS APPLIED arguments.  The government's response was off-point and inapposite to the issues raised in the petitioner's motion.  All of these issues are more fully explained herein.

SUMMARY OF THE ARGUMENTS:

A. Ground #1: Counsel was ineffective for failing to raise an as-applied overbreadth challenge to the application of the § 2251 statute.

B. Ground #2: Counsel was ineffective for failing to raise an as-applied vagueness challenge to the application of the § 2251 statute.

C. Ground #3: Counsel was ineffective for failing to raise a challenge or file a motion challenging the sufficiency of the evidence.

D. Ground #4: Counsel was ineffective for failing to proffer a defense after an in limine ruling change.

E. Ground #5: Counsel was ineffective because of his "opening the door" to the admission of "devastating" testimony.

F. Ground #6: Counsel was ineffective for not moving for mistrial or raising the issue of abuse of discretion when the court reversed its in limine ruling, constructively denying the petitioner's Fifth and Sixth Amendment rights.

G. Ground #7: Counsel was ineffective for failing to object when prosecutor repeatedly engaged in misconduct, violating petitioner's Fifth Amendment right to due process and Sixth Amendment right to effective counsel.

H. Ground #8: Cumulative ineffectiveness of counsel resulted in the denial of petitioner's right to effective counsel.

I. Ground #9: Sentence exceeded guideline range in effect at time of conduct, violating ex post facto.

A & B. GROUNDS ONE AND TWO:

COUNSEL WAS INEFFECTIVE FOR FALING TO RAISE

AN AS-APPLIED OVERBREADTH AND VAGUENESS

CHALLENGE TO THE APPLICATION OF THE § 2251 STATUTE;

AND C. GROUND THREE:

COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE

A CHALLENGE OR FILE A MOTION CHALLENGING THE

SUFFICIENCY OF THE EVIDENCE


Statement of the issue.

There is insufficient evidence to support a verdict of guilt as the petitioner's conduct, which was expression clearly protected by the First Amendment, was void of any sexual conduct and was unequivocably outside the prohibitions of the statute as written.  The statute has, as applied to the facts of this case, been construed in a manner that is vague as its construction is not clear from the statutory language, and overbroad as its construction exceeds the allowable proscriptions of both the statutory language and the constitution, violating the First and Sixth Amendments. Petitioner's counsel did not research or investigate these issues nor raise them in pretrial or trial nor on direct appeal, resulting in ineffective assistance of counsel, allowing the conviction of the petitioner and violating the petitioner's Sixth Amendment right to effective representation.


Photos were First Amendment protected speech and expression.

"All ideas having even the slightest redeeming social importance -- unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion -- have the full protection of the guaranties [of the First Amendment], unless excludable because they encroach upon the LIMITED area of more important interests." Miller v. California, 413 US 15, 20 (1972) (citing Roth v. United States, 354 US 476, 484 (1957), emphasis added).  Accordingly, a photographic account of the life of a nudist family, which could be used to promote the understanding and social acceptance of nudism, would certainly have the hallmarks of this type of communication and expression.

In the charged images, the girls are nude and clearly engaged in activities unrelated to sex.  (See Affidavit of Dale Russell.)  The photographs depict scenes of nudist activities and portray the nudist lifestyle. Id.  In the images in counts 1 and 2, the subject is not posing, but is captured in the action of doing non-sexual activities.  Id. In counts 3 and 4, aside from the subject pausing for a moment while the photo was taken, are also unposed.  Id.  All of the images are considered "action photos" as the subject being photographed is in the process of doing something.  Id. Nothing of any statutory significance is taking place or depicted in the photos. (See 18 U.S.C. § 2251, § 2256.)  To non-nudists, the images may be jarring simply because the subjects, children, are nude.  However, nudity alone is not violative of the statute nor is it unusual in the context of nudism. See United States v. Steen, 634 F.3d 822, 828 (5th Cir. 2011) (per curiam) ("Steen") ("These [photos] could not

5

be considered to have been intended to elicit a sexual response in the viewer any more than mere nudity would".); see also, Doe v. Chamberlin, 299 F.3d 192 (3rd Cir. 2002) ("Chamberlin"), generally.

This type of commentary on the social construct of nudism is speech protected by the First Amendment. (See Chamberlin; United States v. Various Articles of Merchandise, 230 F.3d 649, 658-59 (3rd. Cir. 2000) ("Various Articles"); White Tail Park v. Stroube, 413 F.3d 451, 460-61 (4th Cir. 2005) ("White Tail Park").)  The photographs in this case presumably could have been, for example, published in a photoessay entitled, "A Day in the Life of a Nudist Family" or been used for myriad other manners for purposes of promoting naturism and nudism, including publication in a nudist magazine.

Photographs of nude minors, absent any sexual conduct, are protected speech under the First Amendment.  Osborne v. Ohio, 495 US 103, 112 (1990) ("Osborne").  In Osborne, the Supreme Court, considering whether a law banning lewd nude photos of minors was overbroad, decided that "depictions of nudity, without more, CONSTITUTE PROTECTED EXPRESSION."  Id. at 112 (emphasis added).

Additionally, the petitioner's photographs easily qualify as photojournalism and art.  Any claim otherwise is foreclosed by the fact that rarely is modern photographic art the result of any single, unedited, unmodified image, but rather the culmination of hours of filtering, modifying, and layering. (See Affidavit of Dale Russell).  With the proper artistic effort, a stark, relatively uninspiring photograph,

such as those in the petitioner's case, can be rendered an impressive work of art or photojournalism.  Id. Unquestionably, the petitioner's photographs are expression as defined and protected by the First Amendment.

"[A] function of free speech under our system of government is to invite dispute.  It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.  Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea.  That is why freedom of speech, though not absolute is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a substantive evil that rises far above public inconvenience, annoyance, or unrest[.]"  Terminiello v. Chicago, 337 US 1, 4 (1949) ("Terminiello") (citing Chaplinsky v. New Hampshire, 315 US 568, 571-72 (1942)).  "There is no room under our Constitution for a more restrictive view.  For the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political, [social,] or community groups. The [statute] as construed by the trial court seriously invaded this province." Id. at 4-5.


Statutory text.

Title 18, U.S.C. § 2251, in pertinent part, reads:

§ 2251. Sexual exploitation of children

(a) Any person who employs, uses, persuades, induces, entices,

7

or coerces any minor to engage in, ... any sexually explicit
conduct for the purpose of producing any visual depiction of
such conduct, shall be punished as provided under subsection
(e), if such person knows or has reason to know that such
visual depiction will be transported in interstate or foreign
commerce or mailed, if that visual depiction was produced
using materials that have been mailed, shipped or transported
in interstate or foreign commerce by any means, including by
computer, or if such visual depiction has actually been
transported in interstate or foreign commerce or mailed.
Federal Criminal Code and Rules, 845 (Thomson-West, 2004 Ed.)

Title 18, U.S.C. § `2256, in pertinent part reads:

§ 2256. Definitions for chapter

(2)(A) Except as provided in subparagraph (B), "sexually
explicit conduct" means actual or simulated --

(i) sexual intercourse, including genital-genital, oral-
genital, anal-genital, or oral-anal, whether between persons
of the same or opposite sex;

(ii) bestiality;

(iii) masturbation;

(iv) sadistic or masochistic abuse; or

(v) lascivious exhibition of the genitals or pubic area of
any person;

Federal Criminal Code and Rules, 858 (Thomson-West, 2004 Ed.)


Statutory construction.

Under 18 U.S.C. § 2251(a), the government must prove
that the defendant (1) employed, used, persuaded, induced,

8

enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and (2) a jurisdictional nexus.  18 U.S.C. § 2251(a) (Thomson-West 2004).

The definition of the phrase "SEC" is contained in § 2256(2)(A).  The portion of the statute germane to this case is item (v), "lascivious exhibition of the genitals." United States v. Russell, 662 F.3d 831, 834 (7th Cir. 2011) ("Russell").  Congress has chosen to criminalize only photos of the genitalia or pubic areas and of these parts only when they are the subject of 'lascivious exhibition.'  Only then do they qualify as 'sexually explict conduct.'" Chamberlin at 196.

Interpreting the terms and phrases in the statute begins with understanding and defining the words used.  First, the term "lascivious" is defined as..."depicting or referring to sexual matters in a way that is unacceptable in polite society -- see OBSCENE;...having a strong sexual desire -- see LUSTFUL." Merriam-Webster, 2005.  Clearly, lascivious is manifestly sexual in nature.

It is clear that the word lascivious has a sexual connotation, and its use in the phrase "lascivious exhibition of the genitals" would most certainly mean an exhibition of the genitals done in a sexual manner.  "[A]s used in the child pornography statute, the ordinary meaning of the phrase 'lascivious exhibition' means a depiction which displays or brings forth to view IN ORDER TO ATTRACT NOTICE to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." United

States v.Knox, 32 F.3d 733, 745 (3rd Cir. 1994) ("Knox")
(emphasis added).  The videos in Knox were determined to be
"lascivious" as the camera focused for prolonged time
intervals on close-up views of [the genitals]". Id., at 746.
It should be obvious that the depictions in Knox were
lascivious as the main focus was arguably on the genitals,
making them the focal point.  "A lascivious exhibition is one
that draws attention to the genitals or pubic area". Id., at
745.  Or, "[p]ut another way, the focus of the images must be
on the genitals or the image must be otherwise sexually
suggestive." United States v. Schuster, 706 F.3d 800, 807 (7th
Cir. 2012) (citing United States v. Griesbach, 540 F.3d 654,
656 (7th Cir. 2008) (internal quotations omitted)).

In defining "lascivious exhibition of the genitals,"
the phrase cannot be determined in isolation, separate from
the remainder of the statute.  The "commonsense canon of
noscitur a sociis [] counsels that a word is given more
precise content by the neighboring words with which it is
associated." Freeman v. Quicken Loans, Inc., 132 S. Ct. 2034,
2042 (2012) (citing United States v. Williams, 553 US 285, 294
(2008).

The one common characteristic of items (i) through
(iv) in § 2256 is that they all fall into the obvious category
of sexual acts.  It logically follows that item (v),
"lascivious exhibition of the genitals or pubic area," which
is more general that the first four items, must be in that
same category and must be some type of clearly sexual action
or something that unmistakably falls into the category of
sexual character. Cleveland v. United States, 329 US 14, 18

10

(1946) ("Under the ejusdem generis rule of construction the general words are confined to the class and may not be used to enlarge it.").

Therefore, the definition of this phrase must be construed in the same framework and context as the other four terms in this statute's list, all of which are manifest sexual acts and conduct. Id.  See also: United States v. Johnson, 719 F. Supp. 2d 1059, 1064-65 (W.D. Mo. 2010) ("The fifth category in the definition of sexually explicit conduct i.e. actual or simulated 'lascivious exhibition of the genitals or pubic area' is not as easy to define as the first four, but common sense and rules of statutory construction tell us that it must be considered to be conduct of a similar magnitude [as the rest of the statute.]"); Dolan v. U.S. Postal Serv., 546 US 481, 486 (2006) ("Dolan") ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute"); see also: United States v. Johnson, 655 F.3d 594, 603 (7th Cir. 2011) ("Johnson") (citing Circuit City Stores, Inc. v. Adams, 532 US 105, 114-15 (2001) ("Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.").  The "character" of the phrase cannot be divorced from that of the other purely sexual elements.

Moreover, the definition in § 2256(2)(A) is entitled "sexually explicit conduct," which lends further credence to the sexual nature of the elements.  "Sexually explicit conduct" MUST be something sexual, period.  Not some vague

interpretation inclusive of non-sexual conduct or simple
nudity.  "It is not surprising that courts have universally
held that mere nudity is not included in the category of
'lascivious exhibition of the genitals or pubic area.'" United
States v. Johnson, 719 F. Supp. 2d 1059, 1065 (W.D. Mo. 2010).
 The statute does not express contrary intent, nor is there
any indication that Congress intended to include an
interpretation that would expand the breadth of item (v)
beyond the scope of the other items in the list. McBoyle v.
United States, 283 US 25, 26 (1931) ("McBoyle"); Circuit City
Stores, Inc. v. Adams, 532 US 105, 114-15 (2001); Johnson at
603.  A construction encompassing anything else is simply an
unwarranted expansion of the statutory language.
Additionally, to construe this phrase to include a vague
"intent" component as a solitary proscribable element would be
to step entirely outside the context of the statute and the
intent of the legislature. Id.

    Justice Higginbotham, concurring in Steen, gave an
illuminating analysis on § 2251 and its requirement of
sexually explicit conduct: "After a thorough and searching
review of the plain wording of 18 U.S.C. § 2251(a) and the
legisative history addressing it at the time it was enacted,
... a violation of Section 2251(a) requires that the defendant
employ, use, persuade, induce, entice or coerce the MINOR
HIMSELF to engage in the actual or simulated sexually explicit
conduct for the purpose of producing a visual depiction of the
MINOR'S sexually explicit conduct.  I agree with our panel's
opinion today that an unaware minor may be used to produce
child pornography, but even so, the statute requires that the

image display sexually explicit conduct. The statute does not suggest that the definiton of pornography is contingent upon w hat arouses the defendant, especially if the defendant is aroused by objectively asexual images. As this court noted in Grimes [244 F.3d 375, 380 (5th Cir. 2001)], § 2251 supports a finding that one who inappropriately films a minor for his own sexual pleasure may not be convicted of child pornography unless the images display a minor being used to engage in sexually explicit conduct. The statute's definiton of sexually explicit conduct includes a 'lascivious exhibition of the genitals or pubic area' -- not a lascivious exhibition of winter coats, children's faces, or even breasts, but a lascivious exhibition of the pubic area." Steen at 829-30. That is the most important 'factor' this court should consider because it derives from the statute, not a lonely decision of a district court." Id. (internal citations and quotes omitted, emphasis added).

"Sexually explicit conduct, as defined in the statute, does not include mere nudity, but only CONDUCT that consists of sexual intercourse ... between persons of the same or opposite sex, bestiality, mastubration, sadistic or masochisitic abuse, and LASCIVIOUS exhibition of the genitals or pubic area. What is involved, in other words, is not the clinical, the artistic, nor even the risqui, but hard-core pornography." United States v. X-Citement Video, Inc., 513 US 64, 84 (1994) ("X-Citement Video") (Justices Scalia and Thomas, dissenting; citing Miller v. California, 413 US 15, 24 (1973); internal quotations omitted, emphasis added). X-Citement Video at 84. The "phraseology" of the statute,

enumerating conduct that clearly falls into the class or category of sexual conduct, in this case, overt sex acts and distinct sexual conduct (masturbation, sexual intercourse, etc.), and "laid down in words that evoke in the common mind" conduct that is obviously sexual in nature, dictates that the term "lascivious exhibition" should be construed in a manner to require an exhibition with an unambiguously sexual character, just as the other terms in the statute. Johnson at 603. And, just as in United States v. Taylor, 640 F.3d 255 (7th Cir. 2011), "adopting this sensible way of reading the statute keeps us from giving it unintended breadth." Id., at 264 (citing National Muffler Dealers Ass'n v. United States, 440 US 472 (1979)). Otherwise the construction is in danger of encompassing simple nudity as well as "child erotica" and other protected forms of speech. Additionally, this narrow manner of statutory construction is supported "by the rule of lenity, which instructs that 'ambiguity in the meaning of a statutory provision should be resolved in favor of the defendant.'" Id. (citing United States v. Tufcotte, 405 F.3d 515, 535 (7th Cir. 2005)).

Relevant law regarding clarity and specificty requirements.

Any statute, or its construction as applied, "must be defined specifically" and clearly so that a person contemplating expression or conduct can tailor his actions to remain within lawful bounds. United States v. CIO, 335 US 106, 141-42 (1948) ("[S]tatutes restrictive of or purporting to place limits to [First Amendment] freedoms must be narrowly

14

drawn to meet the precise evil the legislature seeks to curb, and [] the conduct proscribed must be defined specifically so that the person or persons affected remain secure and unrestrained in their rights to engage in activities not encompassed by the legislation.  Blurred signposts to criminality will not suffice to create it.", internal cites omitted).  "The unlawfulness [of the proscribed conduct] must be apparent." Anderson v. Creighton, 483 US 635, 640 (1987).

The void-for-vagueness doctrine and the overbreadth doctrine vindicate overlapping values in First Amendment jurisprudence.  In general, vague laws fail to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited," risk "trapping the innocent," and create a danger of "arbitrary and discriminatory enforcement." Grayned v. City of Rockford, 408 US 104, 108 (1972) ("Grayned").  When a law implicates First Amendment freedoms, vagueness poses the same risk as overbreadth, as vague laws may chill citizens from exercising their protected rights. Accordingly, the Supreme Court has indicated that "stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech." Smith v. California, 361 US 147, 151 (1959).  "Vagueness concerns are more acute when a law implicates First Amendment rights and a heightened level of clarity and precision is demanded of criminal statutes because their consequences are more severe." United States v. Williams, 444 F.3d 1286, 1306 (11th Cir. 2006) (citing Village of Hoffman Estates v. Flipside, Hoffman Estates, 455 US 489, 498-99 (1982)

A statute which is sufficiently specific on its face

15

may be held unconstitutionally applied under the void-for-vagueness doctrine where it is unforeseeably and retroactively expanded by judicial construction.  Cases like Bouie v. Columbia, 378 US 347 (1964) ("Bouie"), where "on its face the language [of the statute] was admirably narrow and precise", differ from cases in which the wording of statute causes it to be judged facially "void for vagueness."  Id., at 351-52.  "The thrust of the distinction, however, is to produce a potentially greater deprivation of the right to fair notice in this sort of case, where the claim is that a statute precise on its face has been unforeseeably and retroactively expanded by judicial construction, than in the typical 'void for vaguness' challenge.  When a statute on its face is vague or overbroad, it at least gives a potential defendant some notice, by virtue of this very characteristic, that a question may arise as to its coverage, and that it may be held to cover his contemplated conduct.  When a statute on its face is narrow and precise, however, it lulls the potential defendant into a false sense of security, giving him no reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction.  If the [Constitution] is violated when a person is required to speculate as to the meaning of penal statutes ... or to 'guess at [the statute's] meaning and differ as to its application, ... the violation is that much greater when, because the uncertainty as to the statute's meaning is itself not revealed until the court's decision, a person is not even afforded an opportunity to engage in such speculation before committing the act in question ." Bouie at

351-52. "There can be no doubt that a deprivation of the
right of fair warning can result not only from vague statutory
language but also from an unforeseeable and retroactive
judicial expansion of narrow and precise statutory language.
As the Court recognized in Pierce v. United States, 314 US
306, 311 [1941], 'judicial enlargement of a criminal Act by
interpretation is at war with a fundamental concept of the
common law that crimes must be defined with appropriate
definiteness.' Even where vague statutes are concerned, it
has been pointed out that the vice in such an enactment cannot
'be cured in a given case by a construction in that very case
placing valid limits on the statute,' for 'the objection of
vagueness is twofold: inadequate guidance to the individual
whose conduct is regulated, and inadequate guidance to the
triers of fact.'" Id., at 352-53 (quoting Freund, The Supreme
Court and Civil Liberties, 4 Vand L Rev 533, 541 (1951)). If
the defect is cured by adding a "clarifying gloss" to the
vague statute to make it "narrower or more definite", that
construction must be stronger or "a fortiori [] where the
construction unexpectedly broadens a statute which on its face
had been definite and precise." Id., at 353. When a statute's
reach is expanded by such an application of construction, it
becomes akin to an ex post facto law. Id., at 353. ("Indeed,
an unforeseeable judicial enlargement of a criminal statute,
applied retroactively, operates precisely like an ex post
facto law, such as Art I, § 10, of the Constitution forbids.
An ex post facto law has been defined by this Court as one
'that makes an action done before the passing of the law, and
which was innocent when done, criminal; and punishes such

17

action,' or 'that aggravates a crime, or makes it greater that it was, when committed,'" Id. (citing Calder v. Bull, 3 Dall 386, 390, 1 L ed 648, 650 (1798)).  A judicial construction that "alters the situation of a party to his disadvantage" operates as an ex post facto law, making conduct "criminal which was not so at the time the action was performed". Kring v. Missouri, 107 US 221, 228-29 (1883).  See also: Fletcher v. Peck, 6 Cranch 87, 138 (1810); Cummings v. Missouri, 4 Wall 27 7, 325-26 (1867).  The legislature is not permitted to pass ex post facto laws; it would logically follow that the courts are "barred by the Due Process Clause from achieving precisely the same result by judicial construction." Bouie at 353-54.  "If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect." Id., at 354 (internal quotations omitted).  When an unforeseeable construction of a criminal statute is applied to a person, "the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime." Id., at 354-55.

Further, even a properly-worded statute can be declared overbroad if it is construed beyond its allowable limits and touches constitutionally-protected expression.  The function of the First Amendment overbreadth doctrine is to prevent broadly worded (or, in this case, broadly construed) statutes which control constitutionally unprotected conduct from deterring constitutionally protected expression. Knox at 751-52.

Statutes which come near or regulate expression must

be drawn and construed specifically and clearly.   "Because
First Amendment freedoms need breathing space to survive,
government may regulate in the area only with narrow
specificity." NAACP v. Button, 371 US 415, 433 (1963) (citing
Cantwell v. Connecticut, 310 US 296, 311 (1940)).   Further,
"where a vague statute [or construction thereof] abuts upon
sensitive areas of basic First Amendment freedoms, it operates
to inhibit the exercise of those freedoms." Grayned at 109
(internal quotations omitted).

These statutes must be narrowly tailored to avoid such
incursions.   "A statute is narrowly tailored if it targets and
eliminates no more than the exact source of the 'evil' it
seeks to remedy." Doe v. Prosecutor, 705 F.3d 694, 699 (7th
Cir. 2012) (citing Frisby v. Schultz, 487 US 474, 485 (1988)).
"[T]he line between speech unconditionally guaranteed and
speech which may legitimately be regulated, suppressed, or
punished is finely drawn." Speiser v. Randall, 357 US 513,
525 (1958).   "Error in marking that line exacts an
extraordinary cost.   It is through speech that our convictions
and beliefs are influenced, expressed, and tested." United
States v. Playboy Entertainment. Group, 529 US 803, 817 (2000)
("Playboy").

Accordingly, a statute must not only be clear on its
face, its construction must be reasonably ascertainable from
the statutory language as well as limited in its breadth to
avoid transgressing the protections of the First Amendment.

When a statute's construction encroaches on
constitutional rights, the court should construe the statute
so that the constitutional question will be avoided.   United

19

States v. Thirty-Seven Photographs, 402 US 363, 369 (1971)
(citing Crowell v. Benson, 285 US 22, 62 (1932): "[w]hen the
validity of an act of the Congress is drawn in question,
and...a serious doubt of constitutionality is raised, it is a
cardinal principle that the Court will first ascertain whether
a construction of the statute is fairly possible by which the
question may be avoided."  Accord, e.g., Haynes v. United
States, 390 US 85, 92 (1968) (dictum); Schneider v. Smith, 390
US 17, 27 (1968); United States v. Rumley, 345 US 41, 45
(1953); Ashwander v. TVA, 297 US 288, 348 (1936) (Brandeis,
J., concurring)).  When a construction as applied potentially
encroaches on protected expression, the First Amendment
demands heightened review of this application. Bose v.
Consumers Union, 466 US 485, 499 (1984).

A statute proscribing speech that is construed beyond
the boundaries of constitutional allowances encroaches on the
protections of the First Amendment and effectively becomes a
limitation based on content.  The practical effect of the
construction is to regulate content beyond the constitutional
boundaries of allowable proscription.  Turner Broad. Sys, Inc.
v. FCC, 512 US 622, 642-43 (1994); City of Cinn. v. Discovery
Network, Inc., 507 US 410, 429 (1993).  Such a construction
cannot stand.  "[W]hen the Government seeks to restrict speech
based on its content, the usual presumption of
constitutionality afforded congressional enactments is
reversed.  'Content-based regulations are presumptively
invalid.'" Playboy, at 816-17 (citing RAV v. St. Paul, 505 US
377, 382 (1992)).  "[T]he Government bears the burden to rebut
that presumption.  This is for good reason." Id. at 817.  "In

20

areas of doubt and conflicting considerations, it is thought better to err on the side of free speech." Hotchner v. Castillo-Puche, 551 F.2d 910, 913 (2nd Cir. 1977).

"[I]n scrutinizing [the] balance [between free expression and government interests], we must keep our thumb on the First Amendment side of the scales, to guarantee that free expression, the keystone of our constitutional structure, will not be shaken." Council of Greenburgh Civic Assoc. v. United States Postal Service, 586 F.2d 935, 938 (2nd Cir. 1978). See also: Community for Creative Non-Violence v. Watt, 703 F.2d 586 (DC Cir. 1983), at 595 ("In short, [United States v.] O'Brien [391 US 367 (1968)] requires [the court] to engage in a balancing of first amendment freedoms and their societal costs that is structured to place a thumb on the first amendment side of the scales.").

"[T]he [Supreme] Court's practice when confronted with ordinary criminal laws that are sought to be applied against protected conduct is not to invalidate the law in toto, but rather to reverse the particular conviction." New York v. Ferber, 458 US 747, 773 (1982) ("Ferber") (citing Cantwell v. Connecticut, 310 US 296 (1940); Edwards v. South Carolina, 372 US 229 (1973)). "While the reach of the statute is directed at the hard core of child pornography, the Court [] was understandably concerned that some protected expression, ranging from medical textbooks to pictorials in the National Geographic would fall prey to the statute." Id. In the case of an as-applied overbreadth challenge, "whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be

applied."  Id. at 773-74 (citing Broadrick v. Oklahoma, 413 US
601, 616-17 (1973)).

The application of an unclear statute or construction
must be decided in favor of repose.  "The rule of lenity
instructs courts to read an ambiguous statute narrowly to
ensure 'fair warning of the boundaries of criminal conduct and
that legislatures, not courts, define criminal liability.'"
United States v. Rosenbohm, 564 F.3d 820, 825 (2009) (citing
Crandon v. United States, 494 US 152, 158 (1990)).


The statute is vague and overbroad as applied in this case.

The petitioner did not violate the plain meaning of
the statute and, therefore, there was no reason for the
petitioner to believe that his conduct in taking the photos or
that the resulting depictions could be considered violative of
the statute as written.

Researching the statute, a person contemplating
publishing a photoessay or book on nudism would conclude it to
be a lawful endeavor.  Even looking into published case law
would not reveal any prohibitions on taking photos of nudists
of all ages engaged in a variety of everyday activities.

However, while not precluding such photos, the use of
the "Dost factors," United States v. Dost, 636 F. Supp. 828,
832 (S.D. Ca. 1986), even as a "guideline" (as used in the
petitioner's case, Russell at 843), does nothing to clarify
the determination of lasciviousness and, indeed, functions to
further confuse and draw the factfinder away from the
statutory language. United States v. Frabizio, 459 F.3d 80, 88

22

(1st Cir. 2006) ("Frabizio") ("[T]he Dost factors have fostered myriad disputes that have led courts far afield from the statutory language."). Simply because many circuits have endorsed the Dost factors does not indicate their ultimate legality nor does it indicate statutory conformity. In fact, the factors are most certainly not composed of the statutory language. Frabizio at 87. Other non-statutory elements introduced into the petitioner's case further clouded the determination of lawful conduct.

As a result, the application of the statute as construed and applied to the facts of this case, whether using Dost or other non-statutory elements, is overly vague and leaves substantial doubt as to what conduct, depictions, or expressions (speech) would elicit criminal sanctions. Consequently, a person reading the statute would not be aware that, or would be unsure whether the statute could be construed so as to prohibit the conduct of the petitioner. Reviewing applicable case law only further clouds the issue. As written, the statute proscribes photos depicting "sexually explicit conduct," which necessarily includes a sexual element or character that was not present in the petitioner's photos. Even if a jurist finds simple nudity subjectively sexual, that subjective conclusion still leaves the existence of an actual statutorily-proscribed sexual element far from certain and definitely short of the "beyond a reasonable doubt" standard required for a conviction. The petitioner's case illustrates how far from the statutory intent courts have strayed. In Ferber, the Supreme Court decided that it was pemissible to proscribe "works which portray sexual acts or lewd exhibitions

of genitalia by children." Ferber at 753, 762-63. The word
"lewd" and the word "lascivious," as used in the § 2251
statute, are wiewed by the court as synonymous. X-Citement
Video at 78-79, 84; Shoemaker v. Taylor, 2013 U.S. App. LEXIS
19049 (9th Cir. 2012). Regardless of which word is used, it
is clear that the proscription involves unmistakable sexual
conduct. Id., at 84. The § 2256 definitions statute was held
not to be vague or overbroad in its construction at that time,
using those criteria. Id., at 78-79. In X-Citement Video,
the depictions at issue involved clearly sexual conduct (inter
alia, sexual intercourse) by a minor. And, in this regard,
the statute clearly proscribes such conduct. However, in this
case, the petitioner's conduct is incomparable and it is far
from clear that his conduct is proscribed. Obviously, no one
could reasonably conclude that the petitioner's images are
obscene under the obscenity statute. It's equally obvious
that the images do not fall into the category of pornography.

The statute as written punishes CONDUCT ("Any person
who employs, [uses, etc.] any minor to engage in, ... any
sexually explicit conduct..."). See § 2251. The photos must
be a depiction of that CONDUCT ("...for the purpose of
producing any visual depiction of such conduct..."). Id. The
conduct depicted by the petitioner DID NOT show ANY type of
sexually explicit conduct. Again, the statute proscribes
CONDUCT, not impure thoughts about the subject, not an immoral
attraction to the subject, not an improper state of mind, not
an intent based on some third party's reaction, nor an intent
without any sort of proveable "substantial step," and the
statute certainly does not proscribe nudity, Ferber at 765

24

n.18, Osborne at 112, which is the only thing the photos depicted. The application in this case overstepped the statutory prohibitions and encroached on the protected expression of the petitioner, making the application overbroad and vague. Consequently, there is insufficient evidence to support his conviction.

The statute is clear in its requirement that there be some sexual conduct, and case law makes it somewhat apparent that this definition may include a graphic focus on the genitals. United States v. Johnson, 719 F. Supp. 2d 1059, 1066-67 (W.D. Mo. 2010). What is not clear is that the definition of "sexually explicit conduct" might vary depending on the photographer's conjectured desires, prior actions, or decision to move to a warmer climate nor is it clear that the definition is dependent on the subjective views, personal reactions, and beliefs of the government or the jury (e.g., in deciding the "Dost factors"), as happened in this case. Using inferences based on these subjective and non-statutory factors exacerbates the always-present risk of a mistaken conviction. These are hopelessly open-ended inquiries and are not operable standards. And, these are elements which are not enumerated in the statute and for which there is no support in the statutory text, case law, or the First Amendment.

An amorphous construction of a criminal statute, where the determination of unlawfulness is as subjective as "I know it when I see it," is not an acceptable legal standard and cannot pass constitutional muster. Cf. Jacobellis v. Ohio, 378 US 184, 197 (1964) (Justice Stewart, concurring) ("I know it w hen I see it"). It would then logically follow that a

25

construction that employs subjective wording such that the standard is arbitrary or potentially encompasses conduct not clearly proscribed by the statute as written would also be unacceptable (e.g. the Dost factors). (see, e.g., Ferber at 95-96). Without a clearly definable construction of the proscriptions of the statute, "sexually explicit conduct," like obscenity, would then simply be something recognized when seen, but not otherwise definable. This type of construction, as applied in this case, is vague and unclear.

Given the statute's proscriptions as written (see § 2251 and § 2256), a reasonable person could not possibly know that taking nude photos of a scene depicting normal everyday activities (lawful conduct) would be considered to be violative of the statute. Therefore, the statute failed to put the petitioner on notice that taking photos of his children engaged in lawful activities in a nudist context could be construed as violating the child pornography statute, making it unconstitutionally vague.

As written, it does not proscribe non-sexual nudity of minors. It should not be extended to include photos of the type taken by the petitioner. McBoyle at 27. To do so is an obviously overbroad and vague application of the statute. The requirements of sexually explicit conduct and "lascivious exhibition of the genitals" in a list of prohibited conduct comprised of graphic sexual conduct cannot reasonably be considered to include the conduct depicted in the petitioner's photographs. "When a rule of conduct is laid down in words that evoke in the common mind only the picture of vehicles moving on land, the statute should not be extended to

26

aircraft..." McBoyle at 26; see also United States v. Golden, 466 F.3d 612, 616 (7th Cir. 2006) (Williams, dissenting); Tourdot v. Rockford Health Plans, 439 F.3d 351, 353 (7th Cir. 2006) ("Ejusdem generis ... confines the scope of a general term to the nature of the precedig class or thing, unless a contrary intent is clearly shown.").

The judicial expansion of a statute to solve some perceived societal ill through a construction that is not within the language of that statute risks creating crimes that Congress may not have intended.  See United States v. Fisher, 6 U.S. (2 Cranch) 358, 386 (1805).  In this case, the statute has been expanded by judicial construction to make criminal a course of conduct not otherwise proscribed, thereby making it overbroad.

Regardless of whether the construction of § 2251 is overbroad, vague, or both, in its construction and application, "the many ambiguities concerning the scope of its coverage render it problematic for purposes of the First Amendment."  Reno v. ACLU, 521 US 844, 870 (1997) ("Reno"). Could a photographer "confidently assume" that a photoessay on the nudist culture that included children would not violate the statute?  Id. at 871.  That is the dilemma that the petitioner faced and, based on the statutory text, he decided that his contemplated conduct did not violate the statute. However, as evidence by the "incoherent body of case law", that determination is far from clear. United States v. Noel, 581 F.3d 490, 500 (7th Cir. 2009).  "This uncertainty undermines the likelihood that the [construction of the statute] has been carefully tailored to the congressional goal

27

of protecting minors from" the harms of child pornography.
Reno at 871.   "The vagueness of such a regulation raises
special First Amendment concerns because of its obvious
chilling effect on free speech."   Id. at 872 (citing Gentile
v. State Bar of Nev., 501 US 1030, 1048-51 (1991)).   Even in
cases where a speaker may be certain that his conduct and
expressions are constitutionally protected, "[t]he severity of
criminal sanctions may well cause speakers to remain silent
rather than communicate even arguably unlawful words, ideas,
and images."   Id., at 872.   This risk of discriminatory
enforcement of a vaguely applied statute increases the effect
of deterring the exercise of protected speech.   Further, the
lack of precision in the construction of this statute leaves
the actor in the predicament of deciding against expressing
himself or censoring his own expression based on the imprecise
construction and the morass of contradictory and confusing
case law.

The petitioner is guaranteed province in the pursuit
of lawful self expression by the First Amendment.   The statute
as construed by the trial court seriously invaded that
province.   It permitted the conviction of the petitioner
because his expressive conduct, although lawful, apparently
stirred people to anger.   "A conviction resting on [] these
grounds may not stand."   Id.   Further, by singling out nude
photos of children which do not depict nor result from the SA
or SEC of the minor, which is the effect of this construction,
the application in this case is effectively content-based.

Worse, in the petitioner's case, it appeared to be a
"free-for-all" with the Dost factors, numerous non-statutory

28

elements, and seemingly anything else that could be dredged up
being used in whatever manner the government felt was
necessary to obtain a conviction, regardless of the truth of
the images.  These so-called "factors" cannot be a flexible
and adaptable set of tools to be used to expand the statute's
reach beyond what the statute itself proscribes or to be
molded to fit whatever the government needs.  A law is a law,
as written, to be applied in a CLEAR and CONSISTENT manner
that is KNOWABLE by those to whom it potentially applies or
affects. Lanzetta v. New Jersey, 306 US 451, 453 (1939).
Otherwise, it makes a farce of our legal system and a
laughingstock of our laws and our Constitution.


The petitioner's conduct did not violate the statute.

        A review of the petioner's conduct makes it clear he
did not use the minor subjects to engage in the first four
categories of the § 2256(2)(A) definition of "sexually
explicit conduct" (i.e. -- actual or simulated sexual
intercourse, bestiality, masturbation, or sadistic or
masochistic abuse); a closer review makes clear the fact that
he also did not engage the minors in a "lascivious exhibition
of the genitals or pubic area" (§ 2256(2)(A)(v)).  The only
activities in which the petitioner engaged the minors was to
be nude, which is not unusual in the context of nudism, and to
engage in other normal, non-sexual activities for a photo
shoot.  From the viewpoint of the minors, they were not asked
to do anything unusual and had no reason to be upset or

damaged by their own conduct.  This is in stark contrast to
the conduct in the first four examples of "sexually explicit
conduct," all of which would be expected to leave lasting
psychological and physical issues with the minor, regardless
of whether they were photographed.  A photo of the
petitioner's daughter sitting on a bed, obviously in the
process of getting up, and absent any sort of sexual
character or focus, cannot reasonably be considered to be
similar in nature to any of the items in items (i) through
(iv) of § 2256, and item (v) may not be expanded to include
such conduct. Dolan at 486; Johnson at 603.

As discussed in the previous section, the petitioner did not
engage any minor in any type of sexually explicit conduct, as
required by the statute.  And no reasonable jurist could
possibly say that there was SEC taking place or depicted in
this case beyond a reasonable doubt.  Even using the Dost
factors, which are NOT statutorily equivalent, there can be no
clear determination that the photos depict lasciviousness
beyond a reasonable doubt.

The jury in this case was instructed to consider a
variety of factors, including Dost, and the district court
"admonished the jury that it was not confined to these
factors..., that the government was not required to prove that
each of these factors was present, and that it was for the
jury to decide the importance of any one factor." Russell at
843.  However, the Dost factors are non-exclusive (the factors
may be present in non-violations or may not present in
violations).  The only RELEVANT factors are the statutory
elements, each of which must be proven beyond a reasonable

doubt.  In re Winship, 397 US 358, 364 (1970); Harris v. United States, 536 US 545, 556-57 (2002).  And no accumulation of non-exclusive, non-statutory "factors" can add up to a statutory violation beyond a reasonable doubt.

The images did not focus on nor draw attention to the subject's genitals, they were not deliberately posed to exhibit the pubic area, and neither the poses, the contexts, nor the settings were sexually suggestive.  Cf. Frabizio at 96.  No characteristic of the photos "brings forth" the genital area to "make it focal" any more than anything else in the photo was "brought forth," such as the subject's face, arm, or foot, nor was the photo taken in a way to highlight or draw attention to the genital area in any way.

As the Supreme Court reiterated in Free Speech Coalition, "the concern with child pornography is 'physiological, emotional, and mental health' of children, and thus regulation is permissible only when targeted at the evils of the production process itself, and NOT THE EFFECT OF THE MATERIAL ON ITS EVENTUAL VIEWERS."  Id. (as cited by United States v. Williams, 444 F.3d 1286, 1300 (11th Cir. 2006), emphasis added).        Basing a determination of guilt on an inferred intent to cause a reaction in a third party is wholly improper. See United States v. Robinson, 161 F.3d 463, 472 (7th Cir. 1998) ("Robinson").  "Child pornography is not created when the pedophile derives sexual enjoyment from an otherwise innocent photo." United States v. Villard, 885 Fl2d 117, 125 (3rd Cir. 1989).  "We must, therefore, look at the PHOTOGRAPH, rather than the viewer", because if "we were to conclude that the photographs were lascivious merely because

[the viewer] found them sexually arousing, we would be engaging in conclusory bootstrapping rather than the task at hand -- a legal analysis of the sufficiency of the evidence of lasciviousness." Id. (emphasis added). The government cannot circumvent the criminal precedure process of proving that the photos are unlawful simply because they do not fall within a proscribable category but instead are legal "child erotica" -- innocent pictures of children arousing or objectionable only in the minds of certain viewers. United States v. Williams, 444 F.3d 1286, 1304 (11th Cir. 2006). "When a picture does not constitute child pornography, even though it portrays nudity, it does not become child pornography because it is placed in the hands of a pedophile". Id. "If the [viewer's] subjective reaction were relevant, a sexual deviant's quirks could turn a Sears catalog into pornography." United States v. Brown, 579 F.3d 672, 683 (6th Cir. 2009). Accordingly, basing that determination on an inferred intent by the photographer is equally unfair.

This "tail of intent that wags the dog" of the charged offense is not supported by either the statutory language nor the legislative history and effectively shifts the burden of proof to the defendant, forcing him to prove that he did NOT have a nefarious intent, the existence of which would apparently render otherwise lawful photos unlawfully lascivious under the theory advanced by the government. In criminal cases, intent is subversive to, not complementary to nor an element of the substantive offense. Without an illegal act, intent is irrelevant.

Put another way, the nature of the offense was not

32

equivocal, i.e., the photos' legality could not turn on whether the photographer had some nefarious intent.  For example, in the case of a defendant who possessed an quantity of illegal drugs and was charged with intent to distribute, the intent is based on an illegal act -- the possession of the drugs.  Without the illegal act, the intent is irrelevant.  The key issue in the petitioner's case is the CONDUCT taking place in the photos or during their production.  Without unlawful conduct, any intent component is irrelevant and is non-dispositive regarding the existence of the requisite unlawful act -- conduct.  "[Conduct] constitutes a crime only if the 'ACT or omission' is voluntary and PENALLY PROHIBITED, and only if the 'accompanying mental state' is a recognized culpable mental state." 1 Wharton's Criminal Law § 25, at 146 (Charles E. Torcia ed., 15th ed. 1993) (emphasis added).  The conduct in question in the petitioner's case is NOT penally prohibited as there was no statutorily prohibited conduct taking place.  Whatever "mental state" may have been present is irrelevant.

Using the government's methods, almost any nude photo of a child in which the genitals are visible can be deemed "lascivious" because of an accumulation of inferences, none of which supposedly need to be proven beyond a reasonable doubt.  This is inconsistent with our justice system's presumption of innocence and wholly unconstitutional as it shifts the burden of proof to the defendant.

More plausibly, the aggregate of the proffered circumstantial evidence is more consistent with and indicative of a pattern of conduct tailored to conform to the statutory

limits rather than an intent to violate the law and "is of little probative value in establishing predisposition." Id. ("evidence that merely indicates a generic inclination to act within a broad range, not all of which is criminal, is of little probative value in establishing predisposition.") Taking nude photos that are within the limits of the law, such as photos depicting the nudist culture, or even "child erotica," is not evidence from which the jury could properly conclude the petitioner was ready and willing to "cross the line" and commit the offense of producing child pornography. United States v. Harvey, 991 F.2d 981, 992 (2nd Cir. 1993) (holding that possession of child erotica alone did not demonstrate a predisposition to obtain child pornography).

The evidence shows nothing more than photographs that were specifically designed and taken to comport with lawful conduct and that the only "intent" was to create photos that did not violate the statute.  There is ample and strong evidence to prove this in the photos themselves and the conduct they depict -- nothing is more dispositive.  Since the statute prohibits engaging a minor in sexually explicit conduct for depicting it in photos, that evidence, alone, is necessarily the stongest of all, and certainly stronger than all of the inferences and conjecture proffered by the government.  The evidence of guilt, however, is wholly based on conjecture and inference.  Even if the evidence of guilt were in equipoise with the evidence of innocence, jurisprudence dictates a decision on the side of innocence. United States v. Johnson, 592 F.3d 749, 755 (7th Cir. 2009).

At a minimum, based on purely circumstantial evidence

34

and inferences, there is "an equal or nearly equal theory of guilt and a theory of innocence" that is "supported by the evidence viewed in the light most favorable to the verdict," the conviction must be reversed because, in this situation, "a reasonable jury must necessarily entertain a reasonable doubt." United States v. Johnson, 592 F.3d 749, 755 (7th Cir. 2009) (citing United States v. Lovern, 590 F.3d 1095, 1107 (10th Cir. 2009)); United States v. Sanchez, 961 F.2d 1169 (5th Cir. 1992); Cosby v. Jones, 682 F.2d 1373, 1383 (11th Cir. 1982); United States v. Burgos, 703 F.3d 1, 10 (1st Cir. 2012); United States v. Glenn, 312 F.3d 58, 70 (2nd Cir. 2002); United States v. Price, 795 F.2d. 62, 62 (10th Cir. 1986); see also Ingram v. United States, 360 US 672, 680 (1959); United States v. Dunmire, 403 F.3d 722, 724 (10th Cir. 2005) ("While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable."). "Put differently, the jury simply had no non-speculative reason to favor any one of these explanations over the others." Lovern, 590 F.3d at 1107. The evidence must have proven the essential elements of the offense beyond a reasonable doubt. That did not happen in this case. In fact, the strength of the evidence supporting innocence (the lack of sexually explicit conduct depicted, lack of child pornography on the petitioner's computer, the fact that the petitioner did NOT tell the minors to act in any sexual manner (Tr. at ___)), is much stronger and points away from the specious inferences of the government.

No evidence supports these inferences; and none of

35

these inferences, individually or collectively, sufficiently
support a finding of lasciviousness or sexually explicit
conduct nor a verdict of guilty, especially considering that
there are equal or stronger inferences pointing toward
innocence as well as direct evidence in the photos that there
was no sexually explicit conduct.  Therefore, the verdict of
guilt rests entirely on speculation and inference, which is
insufficient to support a verdict of guilt.  Robinson at 472
("[W]hile we recognize that in reviewing a guilty verdict
based on circumstantial evidence, we must insure that the
verdict does not rest solely on the piling of inference upon
inference").  The court must ensure that the verdict "does not
rest solely on the piling of inference upon inference".
United States v. Sanchez, 615 F.3d 836, 845 (7th Cir. 2009)
(citing United States v. Moore, 115 F.3d 1348, 1364 (7th Cir.
1997)); Ray v. Clements, 700 F.3d 993, 1017 (7th Cir. 2012)
("Speculation piled on top of speculation does not a factual
finding make; zero plus zero still equals zero.").  Piling
inference upon inference upon inference without any clear
conduct violative of the statute comprises a conviction
without any supporting evidence.  The Supreme Court has also
refused to allow such a determination based on inference.  See
United States v. Lopez, 514 US 549, 567 (1995); United States
v. Morrison, 529 US 598, 615 (2000); Nat'l Fed'n of Indep.
Bus. v. Sebelius, 132 S. Ct. 2566, 2624 (2012) (Thomas,
Ginsburg dissenting); United States v. Bradberry, 517 F.2d
498, 500 (7th Cir. 1975).  Accordingly, the conviction must be
vacated.  United States v. Sullivan, 903 F.2d 1093, 1099 (7th
Cir. 1990) ("Criminal convictions are based on facts...not

36

conjecture.").

The government may not take a situation in which the conduct is plainly obvious and legal and twist it into submission using inferences and conjecture so that it becomes something unlawful.  A verdict based on such a theory cannot stand.  United States v. Redwine, 715 F.2d 315, 319 (7th Cir. 1983) (citing Anderson v. United States, 417 US 211, 224 (1974)).  The verdict cannot be sustained unless there is "substantial evidence to support it," with the court ensuring "that the evidence correctly points to guilt against the possibility of inaccurate or ambiguous inference".  Redwine at 319 (quoting United States v. Kwitek, 467 F.2d 1222, 1226 (7th Cir. 1972)).  Likewise, focusing on intent shifts the burden of proof to the defendant for a LEGAL act (a solitary intent lacking an actus reus is simply the action of "taking photos." See Rivera, 546 F.3d 245, 252 (2nd Cir. 2008); United States v. Hill, 322 F. Supp. 2d 1086-87.

The statute was enacted to "protect victims of child PORNOGRAPHY", which is a "record of abuse of real children", not simple nudity.  Osborne at 109 (emphasis added).  Again, the petitioner's conduct was lawful and the depiction was lawful and was lawfully produced, as there was no sexual conduct depicted nor present in the production.  And, no minors were abused in any way in the production of the photos.  These facts simply cannot be overcome by any inference or conjecture.

In reviewing Steen, the appeals court reversed Steen's conviction, finding that the evidence was insufficient to find a lascivious exhibition of the genitals because "the focal

point of the visual depiction [was] not on [the subject's] genitalia or pubic area[,]... the film did not accent the pubic area[,]" and the subject was engaged in activities unrelated to sex and did not "act[] coy nor willing to engage in sexual activity." The fact that the subject was nude was inapposite as "nudity, without more is protected expression." Steen, at 828.

Likewise, a photo or video of nude minors in the context of nudism "does not depict sexually explicit conduct." United States v. Harvey, 991 F.2d 981, 994-95 (2nd Cir. 1992) ("Harvey"); Chamberlin, generally. Similarly, photos and videos of nude minors engaged in "normal" non-sexual activities depicted in a "normal" manner (e.g. -- typical camera angle and focus, NOT zooming in on genitals, etc.) are not depictions of sexually explicit conduct. Various Articles at 658-59; White Tail Park at 460-61.

The photos in this case are of the same non-sexual character, are NOT sexually explicit, and ARE protected speech under the First Amendment. Without a depiction of sexual activity, without a sexual character or theme, and without a focus on the genitals, there can be no violation of the statute. United States v. Griesbach, 540 F.3d 654, 656 (7th Cir. 2008); Steen at 828. Therefore, the depictions are not included in the narrowly-defined category of unprotected speech.


There is insufficient evidence to sustain a conviction.

It is a non-sequitur conclusion to determine that

38

photos of non-sexual nudist activities could be considered to be prohibited by a statute intended to prevent depictions of sexual abuse of children. See, generally, Ferber, Osborne.  It cannot logically follow that a law that prohibits photographing sexually explicit conduct can be considered to include photograping nudists engaged in conduct unrelated to sex, nor can prohibiting such non-sexual nudist photography be thought to further the goal of eliminating child pornography while maintaining the protections of the First Amendment.

The end result is a conclusion based on a determination of lasciviousness, which is based on the determination of a non-statutory element (see Dost factor #6: "intent to elicit a sexual resonse in the viewer"), the determination of which is based on inferences, which are based on vague and dichotomous factors that are highly subjective, easily misconstrued and non-dispositive.

This chain of inferences piled on top of conjecture takes us far from the statutory requirement that the conduct be sexually explicit.

No rational person could reasonably decide that the minors depicted in the photos in this case were engaged in sexually explicit conduct.  And the depictions are not the product of sexual abuse.

None of the actions of the photographer or the subjects can be distinguished from a normal, quotidian photo shoot.  The only remarkable aspect of the ***shoot is the nudity of the subjects, which is not unusual in the context of a nudism portrayal.

In the absence of evidence that the conduct of Jane

39

Doe 1 and 2 was sexually explicit, the conviction of the petitioner for engaging them in sexually explicit conduct is so devoid of evidentiary support as to violate due process. Therefore, under the principle first established in Thompson v. City of Louisville, a reliable evidence base is totally lacking.  Thompson v. Louisville, 362 US 199, 204 (1960).  The petitioner's counsel failed to raise a sufficiency of the evidence argument before, during, or after trial or on direct appeal.  The lack of diligence on counsels' part severely prejudiced the petitioner in that he was convicted of a crime where none was present and there was insufficient evidence to sustain the verdict.


Summary of grounds one, two, and three.

The challenge in this case is NOT that the statute, as written, is facially void for overbreadth or vagueness, as the government contended in its response, but that the APPLICATION of the statute, IN THIS CASE, is overbroad by being construed and applied in a manner that exceeds its constitutional bounds and is vague in its application to this case as the proscriptions as applied are unclear.  Additionally, lacking a violation of the statute, there is insufficient evidence to support the petitioner's conviction.

The petitioner's conduct cannot be reasonably considered as prohibited by the plain language of the statute. The conduct depicted in the photos was NOT sexual in nature or theme, nor was the conduct of taking those photos in any way sexual.  Lacking sexually explicit conduct, which is

unequivocally required by the statute, one wonders what the basis of the indictment was and how the statute was construed. Perhaps it was the content of the depiction. However, content-based restrictions must be narrow and specific -- for this statute, sexually explicit conduct is unambiguously required. But, again, the depictions were not of sexually explicit conduct as defined by a plain reading of the statute. Regulating content outside of the allowable constitutional limits is an overbroad application, which is a violation of the First Amendment; construing a statute in a way not reasonably understood by reading the statutory language violates Due Process.

The concern stated in Ferber -- that some protected expression would fall prey to the child pornography statute -- is still present in the petitioner's case. Ferber, at 773. In this case, the construction as applied exceeded what was necesary to serve the compelling interest of preventing the sexual exploitation of minors, which is the goal of the statute. This application also regulates depictions which may have a significant educational, artistic, social, or political value, and which receive full First Amendment protection. This overbroad construction permits an unwarranted intrusion into the First Amendment rights of citizens who are not child pornographers, such as the petitioner.

In addition to the presumption of innocence and rule of lenity, strict scrutiny is to be applied to instances where the state's interests conflict with First Amendment rights. See Playboy at 814; Heller v. District of Columbia, 670 F.3d 1244, 1282 (D.C. Cir. 2010) ("Heller"). And, in such cases,

41

strict scrutiny "places a heavy thumb on the scale in favor of the individual right in question, meaning the balance is often struck against the government." Id.  The combination of these conditions should have made it impossible for the government to win a conviction in a case like the petitioner's, where there was no sexually explicit conduct depicted and the government piled inference upon conjecture to infer guilt. But, the petitioner's counsel dropped the ball and never raised any of these issues prior to, during, or after trial nor on appeal.  This failure severly prejudiced the petitioner and resulted in a trial that failed to subject the government's case to an adequate defense.

The photographs at issue in this case recorded no crime.  As there is clearly no sexually explicit conduct taking place in the petitioner's depictions, the conviction cannot be for unlawful conduct (sexual abuse, or otherwise) taking place in the photos, leaving the only remaining reason for conviction as the content of the depiction.  This necessarily makes the application in this case a content-based regulation of speech.  Such applications are "presumptively invalid, and the Government bears the burden to rebut that presumption." Stevens, at 1584; see also Playboy at 813. This unquestionably requires that strict scrutiny be applied in reviewing the statute's application in this case.  However, the content fell outside the narrow and limited area of constitutionally-allowable content proscription and its prohibition encroached on the First Amendment right to free expression.  A content-based restriction of constitutionally-protected speech "can stand only if it survives strict

scrutiny". <u>Playboy</u>, at 816-17; see also <u>United States v.</u>
<u>Alvarez</u>, 617 F.3d 1198, 1219-20 (9th Cir. 2009).

Further, it cannot be determined from the jury's
verdict if the case was decided based on the content of the
photos, conduct extrinsic to the photos, some vague "intent"
theory, or pure conjecture, none of which are statutory
elements nor are they probative of whether there was unlawful
conduct depicted in the images. Further, it cannot be
determined whether the criteria used was the statutory
language nor how much the "Dost factors" or other non-
statutory factors weighed on the jury's decision. Aside from
a jury decision based on the conduct or the depiction of
conduct, and using the statutory language, there can be no
proper and sustainable conviction. Consequently, there is no
confidence that the conviction was proper, fair, and just.

Notwithstanding the importance of the statute's
"ends," the "means" by which the construction attempts to
reach those ends in this case are unconstitutionally
standardless, overbroad, and chilling.

The application of the statute, as construed, whether
using Dost or other non-statutory elements used in the
petitioner's case, is overly vague and leaves substantial
doubt as to what conduct, depictions, expressions, or speech
would elicit criminal sanctions.

The end result of this overbroad and vague
construction is to allow the statutory interpretation to be
crafted to fit the act. This tail that wags the dog scenario
serves to lower the standards for a "lasciviousness"
determination below the statutory proscriptions and below the

required level of First Amendment protections, consequently lowering the hurdle for the government to prove its case, shifting the burden of proof from the government to the petitioner.  As a result, the statute, as applied and construed in this case, prohibited the expression of the petitioner and impermissibly infringed upon his rights as guaranteed by the free speech clause of the First Amendment.

This unconstitutional application of a law requires review to determine the legally permissible limits based on the statutory language.  This review is well within the judiciary's dominion. Marbury v. Madison, 2 L. Ed. 60, 1 Cranch 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."). The Constitution is a paramount law to which all other laws must yield. Id.  In cases raising First Amendment issues, it is clearly established that the "court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." Bose v. Consumers Union, 466 US 485, 499 (1984)) (citing New York Times v. Sullivan, 376 US , 284-86 (1964)).  However, petitioner's counsel failed to subject his case to this review at trial or on appeal.

conclusions

For all the foregoing reasons, the petitioner's freedom of speech, secured to him by the First Amendment, was denied by the overbroad application of the sexual exploitation

44

statue as applied in this case, and his Sixth Amendment right
to fair notice was violated by the vague application of the
sexual exploitation statute, resulting in the improper
conviction of the petitioner.  Further, since the petitioner's
conduct was not covered by the plain language of the statute,
there is insufficient evidence to support his conviction.

These arguments existed prior to the time of trial and
should have been raised by counsel at pretrial, trial, or on
direct appeal.  Counsel, presumably being versed in the
statutes and case law related to the matters in this case,
should have considered these issues and conducted research
prior to trial and formulated arguments so as to subject the
petitioner's case to the adversarial system of justice.
However, counsel clearly failed in these respects, allowing
the government to run roughshod over the petitioner's case and
allowing the petitioner to be found guilty in a situation in
which no crime was committed.  These failures are manifestly
unprofessional and constitute ineffective representation by
counsel.  The petitioner clearly suffered prejudice because of
counsel's ineffective representation, resulting in the
improper conviction of the petitioner.  This ineffective
representation violated the petitioner's Sixth Amendment right
to effective counsel.


Corrective remedy.

Vacatur, or at a minimun, judicial review is required
in this case as it "turns on difficult or novel questions of
constitutional or statutory interpretation" and "the challeged

conduct was not objectively unreasonable in light of existing law." Zalaski v. City of Hartford, 2013 U.S. App. LEXIS 14898 (2nd Cir. 2013) (citing Coollick v. Hughes, 699 F.3d 211, 219-20 (2nd Cir. 2012), internal quotations omitted); see also Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011).

For all the above reasons, the conviciton in this case should be vacated, or an evidentiary hearing ordered and the case remanded for a new trial, or any other relief as deemed proper by the court.

_____

## D. GROUND FOUR:

### COUNSEL WAS INEFFECTIVE FOR FAILING TO
### PROFFER A DEFENSE AFTER AN IN LIMINE RULING CHANGE

In its response to this § 2255 motion, the government contends that this issue was raised on direct appeal. However, the only somewhat-related issue brought up on appeal is the argument that the district court erred in admitting 414 evidence. Appellant Brief of Dale Russell, "Argument A", p.12 (2010). The present issue is that a "no-win" situation was created when the court allowed the contested evidence, constructively rendering defense counsel ineffective. Clearly, the present issue is distinct and dissimilar.

Petitioner rests on the argument for this issue set forth in his §2255 motion.

---

### GROUND FIVE:

### COUNSEL WAS INEFFECTIVE BECAUSE OF HIS
### "OPENING THE DOOR" TO ADMISSION OF
### "DEVASTATING" TESTIMONY

Again, the government erroneously claims that the petitioner has raised this issue on direct appeal; and, again, this is not the case. The argument presented by the petitioner in his § 2255 motion is that ocnsel was wholly ineffective because he "opened the door" to the admission of the 404(b)/414 testimony, effectively devastating his own defense. This is clearly a different issue than that on

47

appeal.

Petitioner rests on the argument for this issue set forth in his §2255 motion.

---

### F. GROUND SIX:
### COUNSEL WAS INEFFECTIVE FOR FAILING TO
### RAISE ISSUE OF ABUSE OF DISCRETION
### AND FIFTH AMENDMENT VIOLATIONS

Contrary to the government's assertion, this is also a distinct issue from that raised on direct appeal.  Issue is counsel's ineffectiveness for failing to make a motion for mistrial or raise the issue of abuse of discretion.

Petitioner rests on the argument for this issue set forth in his §2255 motion.

---

### G. GROUND SEVEN:
### COUNSEL FAILED TO OBJECT TO
### PROSECUTORIAL MISCONDUCT

Petitioner rests on the argument for this issue set forth in his §2255 motion.

---

### H. GROUND EIGHT:
### CUMULATIVE INEFFECTIVENESS OF COUNSEL

RESULTED IN THE DENIAL OF PETITIONER'S

RIGHT TO EFFECTIVE REPRESENTATION


This issue has several sub-issues listed as failures by counsel which cumulatively or individually demonstrated ineffective representation.  The government posits that issue #8(a) was raised on direct appeal.  This is incorrect.  The issue in 8(a) is that counsel failed to present a defense to counter the government's flight evidence.  This is a different issue than what was raised on appeal, which was regarding the jury instruction on flight.

Petitioner rests on the argument for this issue set forth in his §2255 motion.

---

I. GROUND NINE:

SENTENCE EXCEEDED GUIDELINE RANGE IN EFFECT

AT TIME OF CONDUCT, VIOLATING EX POST FACTO


Argument.

The government responded to this issue, even though the petitioner had requested it to be held in abeyance until after a decision in United States v. Peugh, 133 S. Ct. 2072 (decided June 10, 2013) ("Peugh").  In its response, the government incorrectly claims that the petitioner addressed this issue on direct appeal, however that is not true.  In his direct appeal, the petioner challenged the substantive reasonableness of his sentence in an argument posited as such: "The sentence imposed on Russell was unreasonable given the

49

nature of the offenses and his background." Appellant Brief of
Dale Russell, 10-2259, pg. 12 (2010).  That argument
questioned the reasonableness of the sentence in light of
such factors as remorse, marital status, age, education, and
marketable skills.  Id. at pg. 27.  In this present § 2255
motion, the petitioner asserts a procedural fault with his
sentence calculation.  Substantive reasonableness and
procedural error are distinct issues.  Counsel failed to raise
a procedural error argument or ex post facto violation on
direct appeal.

In this issue, the petitioner asserts that his
sentence range was calculated using the guidelines in effect
at the time of his sentencing in May of 2010.  However, as
decided in Peugh, a defendant's sentence must be calculated
using the sentencing guidelines in effect at the time of the
charged conduct. Peugh at 2084.  Failure to do so is a
violation of the ex post facto clause of the Constitution.

Analysis.

The Constitution prohibits ex post facto laws.  U.S.
Constitution, Article I, Section 9, Clause 3 ("No Bill of
Attainder or ex post facto Law shall be passed.").  When the
petitioner was sentenced using the Sentencing Guidelines in
effect at the time of his sentencing, the increases in offense
levels and enhancements from those in effect in 2004 at the
time of the charged conduct violate that prohibition. Peugh,
generally.  This constitutes a procedural error as the
sentencing range was not determined correctly.  In the seventh

50

circuit, the court has determined that "[a] sentence is procedurally unreasonable if the judge thinks it within the [Guidelines] range, but it isn't -- either because the range was not determined accurately in the district court, or because the judge misunderstood what the range was." United States v. Clark, 468 Fed. Appx. 613, 615 (7th 2012) (citing United States v. Bartlett, 567 F.3d 901, 909-10 (7th Cir. 2009).  This error resulted in a sentencing range and a sentence much higher than procedurally allowed, negatively affecting the petitioner's rights.  "An error affects substantial rights if it results in a sentence that is more onerous." United States v. Siegel, 515 Fed. Appx. 592, 594 (7th Cir. 2013) (citing United States v. Marcus, 560 US 258, 130 S. Ct. 2159, 2164 (2010))

It is well established in this circuit that the Guidelines must be calculated correctly before a sentence is determined.  "Although a judge is no longer reqruired to give a guidelines sentence, he is required to make a correct determination of the guidelines sentencing range as the first step in deciding what sentence to impose. United States v. Vrdolyak, 593 F.3d 676, 678 (7th Cir. 2009) (citing Gall v. United States, 552 US 38, 50 (2007); United States v. Gibbs, 578 F.3d 694, 695 (7th Cir. 2009)).  Failure to correctly calculate a guideline sentence is a "significant procedural error." Gall v. United States, 552 US 38, 169 L. Ed. 2d 445, 457-58 (2007); United States v. McKinney, 543 F.3d 911, 913 (7th Cir. 2008) (noting that, under Gall, this court must satisfy itself that the district court correctly calculated the advisory Guideline range).  Accordingly, the sentence and

procedures followed by the district court must be reviewed de novo.  United States v. Mendoza, 510 F.3d 749, 754 (7th Cir. 2007) (citing United States v. Tyra, 454 F.3d 686, 687 (7th Cir. 2006)).  A procedural error in calculating a guidelines range requires remand.  United States v. Abbas, 560 F.3d 665-67 (7th Cir. 2009) ("An error in calculating the sentencing guidelines range is a procedural error that requres remand unless the government can prove that the error is harmless.").

Because the score calculated using the guidelines in effect in May of 2010 resulted in an offense level of 44 (life), any combination of concurrent or consecutive terms totalling less than life would be presumptively reasonable. United States v. Veysey, 334 F.3d 600, 602 (7th Cir. 2003) (directing the court "to impose maximum and consecutive sentences to the extent necessary to make the total punishment equal in severity to what the guidelines would require were it not for the statutory maxima."); United States v. Liddell, 543 F.3d 877, 885 (7th Cir. 2008) ("A sentence within a properly calculated guideline range is presumptively reasonable[.]"); United States v. Craig, 703 F.3d 1001, 1002 (7th Cir. 2012) ("[T]he guidelines tell the judge to sentence consecutively when necessary to bring the total sentence into the guidelines range, even though the sentence would exceed the statutory maximum for any count[.]" (citing United States v. Russell, 662 F.3d 831, 852-53 (7th Cir. 2011); United States v. Boroczk, 706 F.3d 616, 623 (7th Cir. 2012) ("a guidelines range of life imprisonment 'effectively render[s] any prison sentence presumptively reasonable on appeal by the

52

defendant'", citing <u>Tanner</u>, 628 F.3d 890, 908 (7th Cir. 2010)).).

In <u>Peugh</u>, the Supreme Court decided that the ex post facto clause of the Constitution is violated when a defendant is sentenced under guidelines that were promulgated after the commission of his criminal conduct that result in a more punitive guidelines range than would have applied under the guidelines in effect at the time th eoffense was committed. <u>Peugh</u> at 2084. ("A retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an ex post facto violation.") Further, the court found that changes in the law need not bind a sentencing authority for there to be an ex post fact violation, and the presence of discretion does not displace the protections of that clause. <u>Peugh</u> at 2086 (citing <u>Garner v. Jones</u>, 529 US 244, 253 (2000).        Finally, prior to <u>Peugh</u>, since the ordered sentence was within the calculated Guidelines, it was presumptively reasonable and therefore not reviewable.  <u>Miller v. Florida</u>, 482 US 423, 433 (1987) ("Even if the revised guidelines law did not techinically increase the punishment annexed to petitioner's crime, it foreclosed his ability to challenge the imposition of a sentence longer than his presumptive sentence under the old law." (citing <u>Lindsey v. Washington</u>, 301 US 397, 401 (1937))(internal quotes omitted)).  The petitioner in this case was substantially disadvantaged by the court's applicaton of the 2010 guidelines to his 2004 conduct. <u>Id</u>. ("Petitioner therefore was substantially disadvantaged by the retrospective application of the revised guidelines to his crime.")

In the petitioner's case, the court improperly calculated the guideline range by using the guidelines in effect at the time of sentencing instead of the guidelines in effect at the time of the charged conduct, creating a risk of a higher sentence and constituting an ex post facto violation. Peugh, generally.  Under the 2010 Guidelines, the offense conduct score totalled 44, making the sentencing range life (PSR, docket #___).  Under the Guidelines in effect on September 19, 2004, the offense conduct total would have been 37, correspondng to a sentencing range of 210-262 months, 2010 Federal Sentencing Guideline Manual -- making the petitioner's sentence of 456 months, significantly higher than the maximum of 262 months recommended by the correct guideline calculation.  "Such a retrospective increase in the measure of punishment raises clear ex post facto concerns." Id. at 2085. "The Framers considered ex post facto laws to be 'contrary to the first principles of the social compact and to every principle of sound legislation.'" Id. (citing The Federalist No. 44, p. 282 (C. Rossiter ed. 1961) (J. Madison)).  "Even where these concerns are not directly implicated, however, the Clause also safeguards 'a fundamental fairness interest...in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life." Id. (citing Carmell v. Texas, 529 US 513, 533 (2000)).

Conclusion.

The petitioner was prejudiced by the ex post facto application of a sentence guideline that was higher than what

was in effect at the time of charged conduct, violating the ex post facto clause.  Additionally, counsel was ineffective for not raising this issue at sentencing or on direct appeal.

CONCLUSIONS

The petitioner has shown that he was prejudiced by the numerous violations of his constitutional rights and that, absent these violations and absent counsels' ineffective representation, the outcome of his trial would have been different.  He has also made a substantial showing that these numerous violations of his constitutional rights and other issues he has raised would be debateable among jurists of reason.  He also contends that no rational jury could find him guilty beyond a reasonable doubt.

Having demonstrated that his counsel was severely deficient in his performance and that, as a result, his conviction was improper and unconstitutional, the petitioner has satisfied both prongs of the test in Strickland v. Washington, 466 US 668 (1984): that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment", and that "the deficient performance prejudiced the defense", depriving the defendant of a fair trial. Id. at 687.  Additionally, the petitioner's due process rights were denied by an ex post facto violation.

Therefore, based on the foregoing arguments and authorities, the petitioner respectfully asks that the Court grant his motion to vacate his conviction, vacate his current sentence, resentence him, remand for a new trial with appointment of effective trial counsel, grant an evidentiary hearing to determine the merits of his claims, or any other relief to which petitioner may be entitled, pursuant to 28 U.S.C. § 2255.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my ability. Executed on this 13th day of January, 2014.

Respectfully submitted,

Dale Russell

Dale Russell
#56938-112
USP Tucson
PO Box 24550
Tucson, Arizona   85734